# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 22-CR-96 (CKK)** |
| | : | |
| **LAUREN HANDY,** | : | |
| **JONATHAN DARNEL,** | : | |
| **PAULA "PAULETTE" HARLOW,** | : | |
| **JEAN MARSHALL,** | : | |
| **JOHN HINSHAW,** | : | |
| **HEATHER IDONI,** | : | |
| **WILLIAM GOODMAN,** | : | |
| **JOAN BELL, and** | : | |
| **HERB GERAGHTY,** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S OMNIBUS MOTION IN LIMINE

The United States submits this omnibus motion in limine requesting that the Defendants be precluded from making improper arguments or attempting to admit irrelevant evidence. Motions in limine are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). Specifically, the Government requests that this Court: 1) preclude the Defendants from encouraging jury nullification; 2) allow the Government to introduce the Defendants' statements for the permissible purpose of proving the charged offenses; 3) preclude the Defendants from arguing that their speech and/or conduct was First Amendment protected activity, because their speech is evidence in furtherance of the charged civil rights conspiracy and their conduct was prohibited by the FACE Act; 4) preclude the Defendants from introducing into evidence their own self-serving out-of-court statements because it is inadmissible hearsay; 5) preclude the Defendants

from introducing improper "good" character evidence because character is not an essential element of the charged crimes; and 6) limit the Defendants' cross-examination of Government witnesses consistent with Federal Rule of Evidence 611(b) and 18 U.S.C. § 3771 (Crime Victims' Rights Act).

The Government presents these issues to prepare this case for an efficient trial.   For each motion herein, the Government asks that this Court grant the requested relief, or if the Court reserves ruling, to consider the below arguments when the relevant issues arise during trial.

**I.      This Court Should Preclude Defendants from Arguing or Commenting in a Manner That Encourages Jury Nullification, Whether During Voir Dire or During Trial**

The Government anticipates that the Defendants will attempt to encourage jury nullification, which is improper at any stage of the trial, including during voir dire, opening statements, witness examination, or at summation.   Specifically, the Defendants may attempt to induce nullification in the following ways: a) referencing punishment or collateral consequences of conviction; b) alleging vindictive prosecution or abuses by the Department of Justice; or c) introducing evidence of a related Superior Court prosecution, which was dismissed, and arguing that the federal indictment was Governmental overreach.   This Court should preclude the Defendants from encouraging jury nullification because it is improper.

Jury "[n]ullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court – in the words of the standard oath administered to jurors in the federal courts, to 'render a true verdict according to the law and the evidence.'"   *United States v. Carr*, 424 F.3d 213, 220 (2d Cir. 2005) (citations omitted).   "The power of juries to nullify or exercise a power of lenity is just that – a power; it is by no means a right or something that a judge should encourage or permit."   *Id*.   The D.C. Circuit has explained why jury nullification is improper:

This so-called right of jury nullification is put forward in the name of liberty and democracy, but its explicit avowal risks the ultimate logic of anarchy. This is the concern voiced by Judge Soboleff in *United States v. Moylan*, 417 F.2d 1002, 1009 (4th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970):

> To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos. No legal system could long survive if it gave every individual the option of disregarding with impunity any law which by his personal standard was judged morally untenable. Toleration of such conduct would not be democratic, as appellants claim, but inevitably anarchic.

*United States v. Dougherty*, 473 F.2d 1113, 1133–34 (D.C. Cir. 1972).

It is well established that courts have a duty to prevent criminal defendants from making arguments or offering evidence designed to encourage jury nullification.  *See, e.g.*, *United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975) (affirming a trial court order precluding defense evidence that might encourage a "conscience verdict" of acquittal); *United States v. Penn*, 969 F.3d 450, 458 (5th Cir. 2020) (noting that evidence sought to be admitted solely for nullification is irrelevant and inadmissible); *United States v. Walsh*, 654 F.App'x. 689, 696–97 (6th Cir. 2016) (affirming trial court's refusal to allow the defense to argue the legitimacy of federal marijuana laws); *United States v. Dunkin*, 438 F.3d 778, 780 (7th Cir. 2006) (holding that a defense unsupported by credible evidence should not be submitted to a jury since it invites improper jury nullification); *United States v. Funches*, 135 F.3d 1405, 1408 (11th Cir. 1998) (affirming a trial court's exclusion of evidence that a defendant relied to his detriment on erroneous advice from a state official that he could lawfully possess a gun; the defense was irrelevant to the federal charge and its only relevance would have been to "inspire a jury to exercise its power of nullification.").

The Government submits the following arguments in support of its request for an order precluding the Defendants from encouraging jury nullification.

A. *Statements regarding punishment or collateral consequences of conviction should be prohibited.*

The defense should not be permitted to refer to any potential penalties that may be attendant to convictions in this matter.  When, as here, a jury has no sentencing function, it should not consider the question of punishment in arriving at its verdict. *See Shannon v. United States*, 512 U.S. 573, 579 (1994) (noting that evidence relating to the punishment and effect of a defendant's conviction are not probative as to innocence or guilt and can needlessly confuse the jury); *In re United States*, 945 F.3d at 630–31 (explaining that evidence of sentencing consequences upon conviction would be irrelevant if offered solely for purpose of nullification); *United States v. Peterson*, 945 F.3d 144, 157 (4th Cir. 2019) (holding trial court properly precluded defense evidence of his lengthy state sentence given its "self-evident invitation to jury nullification"); *United States v. Lynch*, 903 F.3d 1061, 1080 (9th Cir. 2018) (noting that the jury "has no sentencing function" and "should be admonished to reach its verdict without regard to what sentence might be imposed" (quoting *Shannon*, 512 U.S. at 579)); *see also* 1 Barbara E. Bergman, Criminal Jury Instructions for the District of Columbia, § 2.505 (Matthew Bender, Rev. Ed.) (instructing that the question of possible punishment is not for the jury).

Here, the Defendants should be prohibited from referencing potential punishment or any collateral consequences of conviction at any stage of the trial in this matter.  Any potential sentence or consequence of conviction is an improper consideration for the jury, and any attempt by the Defendants to infect the jury by reference or argument at any stage of the trial would be an

attempt at nullification.   Accordingly, the Defendants should be ordered to refrain from referencing punishment or consequences of conviction.

>   *B. Statements regarding Governmental vindictiveness or abuses by the Department of Justice should be prohibited.*

The Defendants should also be precluded from making any reference to, or arguments concerning, alleged political motivations underpinning the United States' prosecutorial decisions. The United States' decision to prosecute the Defendants rests entirely within its purview.  *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (holding that "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute") (*citing United States v. Goodwin*, 457 U.S. 368, 380 n. 11 (1982)).   Claims of selective or vindictive prosecution are "not . . . defense[s] on the merits to the criminal charge itself, but . . . independent assertion[s] that the prosecutor has either brought the charge for reasons forbidden by the Constitution."   *United States v. Armstrong*, 517 U.S. 456, 463 (1996).   Unless litigated pre-trial, all evidence or argument concerning vindictive, selective, or unfair prosecution must be excluded at trial.   *See United States v. Safavian*, No. 05-0370, 2008 WL 5255534, at *1 (D.D.C. Dec. 12, 2008); *United States v. Berrigan*, 482 F.2d 171, 174-75 (3d Cir. 1973) ("By both tradition and constitutional mandate the jury is given the responsibility of determining guilt or innocence according to the instructions of law delivered by the court.   The question of discriminatory prosecution relates not to the guilt or innocence of [the defendant], but rather addresses itself to a constitutional defect in the institution of the prosecution").

Any arguments that the Government's decision to charge the Defendants was politically motivated is an attempt to encourage the jury to disapprove of the Government's prosecutorial decisions and to acquit the Defendants on this basis.   Such arguments are therefore improper

attempts at nullification.   This issue is being litigated pre-trial through the Defendants' pending motions to dismiss the indictment.   ECF Nos. 159, 215.   If this Court denies the Defendants' motions, it would be improper for the Defendants to make any such arguments to the jury.   Thus, any references to, or arguments concerning, the Government's prosecutorial decisions are irrelevant and highly prejudicial, and the Defendants should be barred from making them.

C. *Evidence of the Superior Court prosecution or statements regarding Governmental overreach in charging federal offenses should be prohibited.*

The Defendants may also attempt to entice jury nullification by improperly introducing evidence of or arguing that their conduct amounted, at most, to a trespass or unlawful entry offense, and that the Government's decision to dismiss the D.C. Code violations they were initially charged with in lieu of the federal indictment was overreaching and abusive.   The Defendants should be precluded from eliciting any such testimony or making these arguments because they are irrelevant, highly prejudicial, and improper attempts at nullification.

On October 22, 2020, eight of the ten Defendants were arrested for blockading the clinic and charged with D.C. Code violations for unlawful entry.   As the federal investigation into the planned clinic blockade continued, the arrested Defendants' D.C. Code violations were pending in Superior Court.   The Defendants were subsequently indicted on March 24, 2022, for federal civil rights offenses, and the D.C. Code violations were dismissed.

The Government anticipates that the Defendants will attempt to minimize their conduct by arguing that the Government turned a minor trespassing incident into a federal case as punishment for exercising their personal beliefs, and that the Government's decision to indict them was abusive.   However, any reference to, or evidence of, the Government's decision to dismiss the D.C. Code violations is irrelevant under Federal Rule of Evidence 401.   *See* Fed.R.Evid. 401.   It

mischaracterizes the facts and suggests that the federal prosecution is overreaching and abusive. The issue before the jury will be whether the United States has proven each element of the charged federal violations of 18 U.S.C. §§ 241 and 248 beyond a reasonable doubt.   The Government's charging decisions shed no light on the Defendants' guilt of violating the Civil Rights Conspiracy statute or the FACE Act.   That is, the Government's decision to dismiss the D.C. Code violations - and present an indictment that was returned by a federal grand jury - is not relevant to the petit jury's role as a fact finder and does not tend to make any consequential fact "more or less probable than it would be" otherwise.[1]   *Id.*   Thus, any evidence or reference to the dismissal of the D.C. Code violations, prosecutorial decisions, or argument that the Defendants conduct was at most a D.C. Code unlawful entry violation are irrelevant and must be excluded.   Fed.R.Evid. 402; *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (citing *Armstrong*, 517 U.S. at 464) ("[P]rosecutors have broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary.").

Even if relevant, any reference to, or evidence of, the Government's decision to dismiss the D.C. Code violations, must be excluded under Federal Rule of Evidence 403 because any minimal probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.   Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury."   Fed.R.Evid. 403.   As discussed above, the Government's charging decisions have no probative value.   On the other side of the balance, such evidence presents a substantial risk of confusing and misleading the jury, of

---

[1] H.R. Rep. No. 91-907, at 33 (noting that the Court Reform Act's reorganization of the District's courts meant that, as of 1970, the U.S. Attorney alone had charging authority over felony "infractions which are both Federal and purely local violations").

requiring the parties to engage in a wasteful mini-trial about the basis of those decisions, and of unfairly prejudicing the Government. *E.g.,* ; *United States v. Lyons*, 403 F.3d 1248, 1255-56 (11th Cir. 2005); *United States v. Smith*, 145 F.3d 458, 462-63 (1st Cir. 1998) (evidence of defendant's acquittal would have "opened the discussion to complicated sentencing issues" requiring the jury to "sort through the meaning of a legal judgement of acquittal"); *United States v. Tirrell*, 120 F.3d 670, 677-78 (7th Cir. 1997); *United States v. Riley*, 684 F.2d 542, 546 (8th Cir. 1982); *United States v. Kerley*, 643 F.2d 299, 300-01 (5th Cir. 1981).

Furthermore, such evidence may improperly and implicitly encourage jury nullification by suggesting that the jury should not care about the offense because the Defendants' conduct was effectively an unlawful entry and that the Government abandoned that prosecution in effort to up the ante and punish the Defendants for doing something that the Defendants believe they were morally obligated to do. Any such evidence or argument is improper and should not be presented to a jury, and this Court should preclude the Defendants from referencing or arguing that their conduct amounted to a minor trespass or unlawful entry offense, and that the Government's charging decision was overreaching and abusive. *See United States v. Goodwin*, 457 U.S. 368, 384 n. 19 (1982) (analyzing claims of prosecutorial vindictiveness for charging decisions to be resolved pretrial by the court, not a jury).

## II.   This Court Should Allow the Government to Introduce the Defendants' Statements to Prove the Charged Offenses.

The Government requests an order allowing the admission of the Defendants' statements, which are evidence of an element of the charged offenses (*e.g.*, conspiracy) or to establish the Defendants' motive or intent. These statements are admissible under the following Federal Rules of Evidence: 801(d)(2)(A) as non-hearsay statements made by an opposing party; 801(d)(2)(E) as

non-hearsay statements made in furtherance of the charged conspiracy; and 803(3) as a hearsay statement exception to prove the Defendants' "then-existing state of mind (such as motive, intent, or plan)."   The Defendants made these statements through: text messages and social media posts by certain co-Defendants in furtherance of the conspiracy; video recorded statements by the Defendants that were made during the commission of the FACE Act offense; and video recorded custodial interrogations of eight Defendants.   All are admissible at trial.

Statements made by a Defendant – whether by text message, social media post, or video recorded - that are authenticated and offered by the Government at trial are admissible against the declarant-Defendant as an admission by a party-opponent.   Fed.R.Evid. 801(d)(2)(A); *United States v. Bailey*, No. 19-156, 2022 WL 4379059, at *2 (D.D.C. Sept. 22, 2022, J. Kollar-Kotelly). They are also admissible against a declarant-Defendant as proof of their "then-existing state of mind" to prove intent and motive.   Fed.R.Evid. 803(3); *United States v. Safavian*, 435 F.Supp.2d 36, 45 (D.D.C. May 23, 2006).   Moreover, those statements are further "admissible as non-hearsay when they are 'made by the party's co-conspirator during and in furtherance of the conspiracy."   Fed.R.Evid. 801(d)(2)(E); *Bailey*, 2022 WL 4379059, at *2.

The Government intends to introduce several statements made by the Defendants before, during, and after the charged offenses, which will aid the jury's determination as to whether the Government has proved the elements of the charged civil rights conspiracy and/or to establish the Defendants' motive and intent in committing the charged FACE Act offense.   *See* Fed.R.Evid. 801(d)(2)(A) & (E), and 803(3).   These statements can be introduced at trial because there were either made by a Defendant or a co-conspirator, and form part of the crimes.   *Id*.

These statements are further admissible notwithstanding any argument advanced by the Defendants that their relevant statements are protected speech under the First Amendment.

Admission of the Defendants' relevant statements would not violate the First Amendment. *See Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) (the First Amendment "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent"). "Evidence of a defendant's previous declarations or statements is commonly admitted in criminal trials subject to evidentiary rules dealing with relevancy, reliability, and the like." *Id.*; *see also United States v. Hassan*, 742 F.3d 104, 127 (4th Cir. 2014) (citation omitted) ("Indeed, because 'the essence of a conspiracy is an agreement to commit an unlawful act,' the supporting evidence may necessarily include a defendant's speech."). As Judge Cooper recently noted:

> Nor does the Court find any First Amendment concerns in the government's use of [defendant's] statements to show intent . . . . If [defendant] had expressed his views only through social media, he almost certainly would not be here. But he also allegedly took action—entering the Capitol without lawful authority in an alleged attempt to impede the Electoral College vote certification. His words remain relevant to his intent and motive for taking those alleged actions.

*United States v. Robertson*, 588 F. Supp. 3d 114, 124 (D.D.C. 2022) (internal citation omitted); *see also United States v. Fullmer*, 584 F.3d 132, 158 (9th Cir. 2009), (admission of speeches advocating civil disobedience did violate First Amendment.

The Defendants' statements that shed light on the elements of the offenses, including the conspiratorial agreement, or proof of any Defendant's motive or intent, should be admitted regardless of whether any of those statements may otherwise constitute speech protected by the First Amendment. Accordingly, the Government requests a pre-trial ruling that the Defendants' statements are admissible after the Government appropriately authenticates and establishes foundation, and that the First Amendment does not bar admission of any Defendants' statement offered by the Government for an appropriate purpose.

**III.    This Court Should Preclude the Defendants from Suggesting or Arguing That Their Speech or Conduct was Protected by the First Amendment.**

The Government further moves in limine to preclude the defense from eliciting evidence or arguing to the jury that the Defendants' statements and conduct are Constitutionally protected activity.   The Government anticipates that the Defendants will claim that they were at the Clinic praying and encouraging abortion patients and providers to choose life.   They will likely argue that they collectively organized and engaged in a lawful expression of their personal beliefs – whether political, religious, or social – and that the Government has charged them with offenses for engaging in conduct that is protected by the First Amendment.   None of the offenses with which the Defendants are charged criminalizes speech.   Instead, the Defendants are charged with crimes that punish agreements to commit, and the commission of, defined criminal objectives. The Defendants have raised similar arguments in their pending motions to dismiss, and if rejected by this Court, they should be barred from asserting a First Amendment defense at trial.

The Defendants are not entitled to a First Amendment defense as a matter of law.   In *Fullmer*, the court specifically noted that a defendant's conduct—which included writing an editorial and recruiting speakers to travel and advocate on behalf of his organization—was not criminal, and that punishing him based on that conduct alone would be unconstitutional.   584 F.3d at 158.   The court, nonetheless, citing *Mitchell*, held that the defendant's "conduct . . . does provide circumstantial evidence from which a jury could have reasonably inferred that [defendant] was involved in a conspiracy . . . ."  *Id.*   Accordingly, the First Amendment provides no protection, even if evidence of the Defendants' crimes is intertwined with political, religious, or moral discussions and/or rhetoric.  *See also United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("[A]lthough the conspiracy was closely related to, and indeed proved by, many of the

11

defendants' conversations about political and religious matters, the conviction was based on an agreement to cooperate in the commission a crime, not simply to talk about it").

Moreover, any cross-examination or argument that the Defendants may wish to make regarding the First Amendment is irrelevant under Federal Rule of Evidence 401.   Such a defense lacks any "tendency to make the existence of [a] fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," and because they are not entitled to a First Amendment defense as a matter of law.   To the extent there is any relevance to any of the Defendants' First Amendment claims, this Court should exclude any questioning and argument along those lines under Federal Rule of Evidence 403. Any attempt to shift the jury's attention to questions about whether the Defendants' statements were protected by the First Amendment, rather than the charged offenses, risks confusing the issues, wasting time, misleading the jury, and unfairly prejudicing the Government.   Therefore, the Government requests that this Court bar Defendants from asserting a First Amendment defense.

## IV.  This Court Should Preclude the Defendants' Use of Their Own Out-of-Court Statements as Inadmissible Hearsay

The Government anticipates that the Defendants may attempt to elicit testimony from witnesses or introduce pre- and post-arrest recorded statements that are not inculpatory and to prove the truth of the matter asserted.   The Defendants should not be permitted to admit their pre- or post-arrest exculpatory statements.

While the Government may offer a Defendant's statement as the statement of a party opponent, Fed. R. Evid. 801(d)(2), the Defendants may not offer their own hearsay statements.

> When the government offers in evidence the post-arrest statement of a defendant it . . . may wish to use the statement to establish the truth of the matter stated.   In these circumstances, under Rule 801(d)(2)(A) the statement is not hearsay, because it is simply a statement of the opposing party.   . . .   When the defendant seeks to

12

> introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.

*United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). "[S]elf-inculpatory statements, when offered by the government, are admissions by a party opponent and are therefore not hearsay, see Fed.R.Evid. 801(d)(2), but the non-self-inculpatory statements are inadmissible hearsay." *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (citing *Williamson v. United States*, 512 U.S. 594, 599 (1994); *see United States v. Griffith*, No. 21-244-2, 2023 WL 2043223, at *6 (D.D.C Feb. 16, 2023, J. Kollar-Kotelly) ("The Court holds admissible as non-hearsay Defendant's statements when offered by the Government and finds inadmissible as hearsay Defendant's statements when offered by Defendant in his case-in-chief unless an exception applies."); *United States v. Mitchell*, 502 F.3d 931, 964-65 (9th Cir. 2007) (Defendant not allowed to elicit exculpatory statements he made during interviews with law enforcement because the statements were inadmissible hearsay); *see also United States v. Holland*, 76 F.App'x 452, 456 (3d Cir. 2003) ("*Williamson* makes clear that exculpatory portions of statements otherwise inculpatory as to the declarant are inadmissible."). Defendants who choose not to testify and subject themselves to cross-examination thus do not have the right to present self-serving hearsay statements. *See United States v. Wilkerson*, 84 F.3d 692 (4th Cir. 1996).

The Defendants may attempt to rely on Federal Rule of Evidence 106, the "Rule of Completeness," to introduce portions of their statements that are not offered by the Government. *See* Fed.R.Evid. 106 ("If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part – or any other writing or recorded statement that in fairness ought to be considered at the same time."). Rule 106, however, is not a rule of admissibility. Rather, it addresses the order of proof. Rule 106 directs the Court to

"permit such limited portions [of a statement] to be contemporaneously introduced as will remove the distortion that otherwise would accompany the prosecution's evidence." *United States v. Sutton*, 801 F.2d 1346, 1369 (D.C. Cir. 1986). The rule does not "empower[] a court to admit unrelated hearsay." *United States v. Woolbright*, 831 F.2d 1390, 1395 (8th Cir. 1987).

Rule 106 only applies when the Government's introduction of any Defendants' statement is "misleading because of a lack of context," leading to a "distortion" of that Defendant's meaning. *Sutton*, 801 F.2d at 1369. By contrast, the rule cannot be used to generally introduce exculpatory portions of a statement merely because "they were made contemporaneously with other self-inculpatory statements" offered by the Government. *Ortega*, 203 F.3d at 682. This Court should ensure that any relevant statements by the Defendants offered by the Defendants be necessary to correct a misleading statement offered by the Government, or otherwise preclude the Defendants from offering any of their own hearsay statements as evidence in this case.

Based upon the foregoing, courts routinely preclude Defendants from offering their own exculpatory or otherwise potentially relevant statements because they are inadmissible hearsay, and this Court should bar the Defendants from seeking to admit portions of their own self-serving statements without subjecting themselves to the truth-seeking function of cross-examination. The Defendants should further be prohibited from referencing these statements during voir dire, opening statements, or eliciting their own self-serving statements through examination of any Government witness.

## V.      This Court Should Preclude the Defendants from Introducing Improper Character Evidence

The Defendants should be barred from introducing evidence of, or referencing, their general good character or specific instances of good conduct, including but not limited to,

14

charitable works, affiliations with religious or social organizations, admirable family lives, or other evidence of their standing in the community.   Such evidence would constitute improper character evidence under Federal Rule of Evidence 404.

Rule 404 generally prohibits the introduction of evidence of a person's character to prove that the person acted in conformity with that character.   Fed.R.Evid. 404(a)(1) & (b)(1); *United States v. Sutton*, No. 21-0598, 2022 WL 13940371, at *16 (D.D.C. Oct. 23, 2022).   The federal rules provide an exception whereby a defendant may offer evidence of his character, but only if it relates to a "pertinent" character trait, "and if the evidence is admitted, the prosecutor may offer evidence to rebut it."   Fed.R.Evid. 404(a)(2)(A); *Sutton*, 2022 WL 13940371, at *16-17; *see United States v. Pantone*, 609 F.2d 675, 680 (3d Cir. 1979) ("Fed.R.Evid. 405 forbids the use of specific instances of conduct to prove good or bad character . . . unless character 'is an essential element of a crime charged.'") (citations omitted); *United States v. Yarbrough*, 527 F.3d 1092, 1101 (10th Cir. 2008) (holding that the rule makes clear that character evidence in the form of propensity evidence is not allowed, but that a defendant may offer character evidence adducing a pertinent character or trait); *United States v. Ellisor*, 522 F.3d 1255, 1270, 71 (11th Cir. 2008) (affirming that "[e]vidence of good conduct is not admissible to negate criminal intent") (quotation omitted).

In this case, character evidence offered to prove the general good character of any Defendant – such as charitable work, affiliations with religious or social organizations, admirable family life, or general good standing in the community – is not admissible because it is not pertinent to the charged civil rights conspiracy or FACE Act violations against them.   Although a Defendant's character for law-abidingness is always "pertinent," *Yarborough*, 527 F.3d at 1101-02 (citing *Michelson v. United States*, 335 U.S. 469, 476 (1948)), and although a Defendant's

character for peacefulness may be pertinent in this case, other character evidence is not pertinent to establishing whether the Defendants violated the FACE Act.   *See United States v. Carpenter*, No. 21-305, 2023 WL 1860978 (D.D.C. Feb. 9, 2023) (finding that specific instances of good conduct unrelated to a character trait that is an essential element of a charge would violate Rule 405); *see also Sutton*, 2023 WL 13940371 (same); *United States v. Chwiesiuk*, No. 20-0536, 2023 WL 3002493 (D.D.C. Apr. 19, 2023, J. Kollar-Kotelly) (same).

Further, even if evidence of any Defendant's good character or conduct was indicative of a pertinent character trait, it may be offered only in the form of opinion or reputation testimony, Fed.R.Evid. 405(a), and not specific acts, unless the "person's character or character trait is an essential element of a charge, claim, or defense."   Fed.R.Evid. 405(b); *id.*

Accordingly, any evidence of the Defendants' good character or specific acts of good conduct should be excluded.   The Defendants should be limited to introducing only general reputation or opinion evidence concerning a pertinent character trait.

## VI.   This Court Should Preclude the Defendants from Improperly Cross-Examining Government Witnesses

The Government moves to preclude the admission of any evidence, through cross-examination, regarding the specific reproductive health services Patient A sought or obtained at the Clinic.   *See* ECF No. 113 (superseding indictment) at ¶¶ 6, 30-31, 38).   All that is relevant to the jury's inquiry at trial is whether Patient A sought any reproductive health care at the Clinic, as defined by 18 U.S.C. § 248(e)(5), and not whether Patient A specifically sought or obtained abortion related care.   This topic has no probative value and would improperly compromise Patient A's significant privacy interests if needlessly disclosed to the public.   The Government does not intend to elicit testimony related to Patient A's private health information or details about

the care she received at the Clinic.   The Government will only establish that Patient A sought "reproductive health services," which is all that is required to establish an element of a FACE Act violation.   For this reason, cross-examination by any Defendant beyond the scope of direct examination by the Government would be impermissible.   *See* Fed.R.Evid. 611(b).   To the extent the Defendants seek to argue that Patient A's private health information is relevant and within the scope of the Government's examination, the Government requests an order under Federal Rule of Evidence 403 foreclosing unnecessary cross-examination on these topics.

It is well established that this Court may reasonably limit a criminal defendant's presentation of evidence and cross-examination of witnesses.   *See United States v. Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses.").   Thus, this Court may prohibit cross-examination that goes beyond matters testified to on direct examination.   Fed.R.Evid. 611(b).   This is particularly so when the information at issue is of a sensitive nature.   *See e.g.*, *United States v. Balistreri*, 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding a district court's decision to prohibit cross-examination of agent about sensitive information that agent did not testify about on direct examination and did not pertain to the charges in the case), *overruled on other grounds*, *Fowler v. Butts*, 829 F.3d 788 (7th Cir. 2016).   The Confrontation Clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."   *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).[2]

---

[2] Even if evidence may be relevant to an affirmative defense, that evidence should not be elicited during cross-examination of Government witnesses during the Government's case-in-chief. Instead, it would be elicited (if at all) only after a Defendant sufficiently establishes that defense through affirmative evidence presented during their own case-in-chief.   *See United States v. Lin*,

The FACE Act defines "reproductive health services" to mean those "provided in a hospital, clinic, physician's office, or other facility, and includes medical, surgical, counselling, or referral services related to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy."   18 U.S.C. § 248(e)(5).   Count Two of the superseding indictment charges the Defendants with a FACE Act violation for intentionally engaging in prohibited conduct "because Patient A was obtaining . . . reproductive health services."   ECF No. 113.   The Government is not required to prove the precise reproductive health service Patient A sought, but rather only prove that she sought a service as defined by the FACE Act.

Any attempt by the Defendants to cross-examine any Government witness about details concerning Patient A's health or the reason she was a clinic patient beyond obtaining reproductive health care is irrelevant.   Any cross-examination about Patient A's status as a clinic patient should be restricted to whether she sought or obtained "reproductive health services" only.

Moreover, The Crime Victims' Right Act affords a crime victim the right to be "reasonably protected" and "treated with fairness and respect for the victim's dignity and privacy."   18 U.S.C. § 3771(a)(1), (8).   Any inquiry by the Defendants about Patient A's private health information should be precluded to protect her right to dignity and privacy.

Even if Patient A's private health information was marginally relevant to the Defendants' defense, this Court may exclude evidence under Federal Rule of Evidence 403 on the ground that its marginal probative value is significantly outweighed by Patient A's privacy interests.   The

---

101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging that a trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol*, 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that the trial court properly limited cross-examination of alleged CIA murder scheme until the defense put forth sufficient evidence of the affirmative defense in its case-in-chief).

Supreme Court has recognized that trial courts' balancing under Federal Rule of Evidence 403 should account for concerns extrinsic to the litigation, such as "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that [would be] . . . marginally relevant." *Olden v. Kentucky*, 488 U.S. 227, 232 (1988) (citing *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986)).

This Court should therefore preclude the Defendants from cross-examining any Government witness about Patient A's private health information, and restrict cross-examination to matters elicited during direct examination about Patient A's health care, which will be limited to the simple fact that she "was obtaining . . . reproductive health services." ECF No. 113.

## VI.    Conclusion.

For the foregoing reasons, the Government requests that this Court grants its omnibus motion in limine.   The Government further requests that this Court allow the United States to supplement this motion if additional issues arise that require the Court's attention.   In addition, because the Defendants have not yet provided reciprocal discovery required under Federal Rule of Criminal Procedure 16(b), the Government requests the opportunity to supplement this motion in limine to address any issues triggered by the Defendants.

Respectfully submitted,

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

*/s/ Sanjay H. Patel*
SANJAY H. PATEL
IL Bar. No. 6272840
Trial Attorney
Criminal Section
Civil Rights Division
Email: Sanjay.Patel@usdoj.gov

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052
*/s/ John Crabb Jr.*
JOHN CRABB Jr.
NY Bar No. 2367670
Assistant United States Attorney
Email: John.D.Crabb@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-cr-96-CKK** |
| | : | |
| **v.** | : | |
| | : | |
| **LAUREN HANDY, et al.,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>ORDER</u>**

   **AND NOW**, this _____ day of _____ 202__, after reviewing the

submissions by the Government and defense counsel, and a hearing on this matter;

   It is hereby **ORDERED** that the Government's omnibus motion in limine is

**GRANTED**.

      **BY THE COURT:**

      _____
      **THE HONORABLE COLLEEN KOLLAR-KOTELLY**
      United States District Judge

21